UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Fairfield Sentry Ltd. (In Liquidation), et al., | ) ) ) |
| Plaintiffs, | ) ) |
| -against- | ) ) |
| HSBC Private Bank (Suisse) S.A., et al., | ) ) |
| Defendants. | ) ) ) ) |

No. 12 - _____

## MEMORANDUM OF LAW IN SUPPORT OF
## MOVING DEFENDANTS' EMERGENCY MOTION FOR A STAY OF
## THE BANKRUPTCY COURT'S MEMORANDUM DECISION AND ORDER
## GRANTING THE FOREIGN REPRESENTATIVE'S MOTION SEEKING
## EXPEDITED INITIAL DISCLOSURES AND LEAVE TO APPEAL THAT ORDER

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Of Counsel:

Evan A. Davis
Thomas J. Moloney
Lawrence B. Friedman
Lewis J. Liman
Jeffrey A. Rosenthal
Carmine D. Boccuzzi, Jr.
Breon S. Peace

One Liberty Plaza
New York, NY 10006
(212) 225-2000

*Attorneys for Defendants HSBC Private Bank
(Suisse) S.A., HSBC Securities Services
(Luxembourg) S.A., HSBC Bank USA N.A., HSBC
Private Bank (C.I.) Limited (sued here as HSBC*

*Private Bank (Guernsey) Ltd.), HSBC Private
Banking Nominee 1 (Jersey) Limited (sued here as
FS/HSBC Private Banking Nom), Robinson & Co.,
Banco Nominees 2 (Guernsey) Limited (sued here as
Banco Nominees (IOM) Limited), HSBC Guyerzeller
Trust Company A.G., HSBC Securities (Panama)
S.A., HSBC International Trustee Limited, HSBC
Institutional Trust Services (Asia) Limited, Somers
Nominees (Far East) Limited, HSBC Bank Bermuda
Limited, Caceis Bank Luxembourg, Caceis Bank as
successor in interest to CDC IXIS, Caceis Bank as
successor in interest to Caceis Bank Ex Ixis Is,
Crédit Agricole (Miami), Crédit Lyonnais, Crédit
Lyonnais Miami, Crédit Agricole (Suisse) S.A.,
Crédit Agricole Titres, Calyon Paris, Cais Bank,
Citibank (Switzerland) AG, BNP Paribas (Suisse)
SA, BNP Paribas (Suisse) SA Ex Fortis, BNP
Paribas (Suisse) SA Private, BNP Paribas Arbitrage
SNC, BNP Paribas Securities Nominees, Fortis Bank
SA/NV n/k/a BNP Paribas Fortis, BNP Paribas
España, BGL BNP Paribas (sued as FS/ Fortis
Banque Luxembourg and FS/Banque Générale du
Luxembourg), BNY Mellon International Ltd. and
BNY AIS Nominees Limited*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. v

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................... 4

ARGUMENT ................................................................................................................... 9

I.  THE BANKRUPTCY COURT'S ORDER¬ IS INFECTED BY FUNDAMENTAL
    ERRORS OF LAW.................................................................................................. 9

    A.  The Bankruptcy Court Failed to Make Key Findings In Its Decision Based
        On A Misreading Of Certain Subscription Agreements............................. 9

    B.  The Bankruptcy Court Ignored This Court's Instruction To Reconsider
        Mandatory Abstention ............................................................................... 14

    C.  The Bankruptcy Court Erred in Ruling That It Does Not Need Subject
        Matter or Personal Jurisdiction to Issue the Foreign Disclosure Order...... 15

II. THIS COURT SHOULD GRANT LEAVE TO APPEAL THE FOREIGN
    DISCLOSURE ORDER .......................................................................................... 19

    A.  The Appeal Involves Controlling Questions Of Law Which Will Have
        A Material Effect On The Actions.............................................................. 20

    B.  Substantial Grounds Exist For Differences Of Opinion On The Controlling
        Questions Of Law ...................................................................................... 20

    C.  An Immediate Appeal Will Materially Advance The Ultimate Termination
        Of This Litigation ..................................................................................... 21

    D.  The Bankruptcy Court's Foreign Disclosure Order Presents Exceptional
        Circumstances Meriting Immediate Review............................................... 22

III. THIS COURT SHOULD STAY THE BANKRUPTCY COURT'S FOREIGN
     DISCLOSURE ORDER PENDING APPEAL......................................................... 23

    A.  Moving Defendants Have a Substantial Possibility of Success on the
        Merits of Their Appeal.............................................................................. 24

    B.  The Moving Defendants Will Suffer Irreparable Injury Absent A Stay..... 24

|   | C. | The Foreign Representative Will Not Be Harmed By A Stay ................... | 25 |
|---|----|-----------------------------------------------------------------------------|----|
|   | D. | The Public Interest Will Be Served By A Stay ........................................... | 25 |
| CONCLUSION................................................................................................................ |   |   | 25 |

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. 1334(c)(2)............................................................................................ 14

28 U.S.C. § 158(a) .............................................................................................. 19

28 U.S.C. § 1292(b)............................................................................................ 22

**Cases**

*111 Debt Acquisition LLC v. Six Ventures, Lt*d.,
No. 04 Civ. 8955 (NRB), 2008 WL 3874630 (S.D. Ohio Aug. 15, 2008) ........................ 16

*Bersch v. Drexel Firestone, Inc.,*
519 F. 2d 974 (2d Cir. 1975), *rev'd on other grounds, Morrison v. Nat'l Australia Bank*
*Ltd.*, 130 S. Ct. 2869 (2010)................................................................................ 19

*City of New York v. Pullman Inc.,*
477 F. Supp. 438 (S.D.N.Y. 1979) (Weinfeld, J.) ............................................... 18

*DirecTV Latin Am., LLC v. Park 610, LLC,*
691 F. Supp. 2d 405 (S.D.N.Y. 2010)................................................................. 19

*Eberle v. Smith,*
No. 07-CV-0120, 2008 WL 238450 (S.D. Cal. Jan. 29, 2008)............................. 25

*Estate of Ungar v. Palestinian Authority,*
400 F.Supp.2d 541 (S.D.N.Y. 2005).................................................................... 16

*Ex parte McCardle*
7 Wall. 506 (1869) ............................................................................................. 15

*Gibson v. Kassover (In re Kassover),*
343 F.3d 91 (2d Cir. 2003).................................................................................. 19

*Goddard v. CSK Auto, Inc.,*
No. C09-1391 (MJP), 2009 WL 4015611 (W.D. Wash. Nov. 18, 2009) ............................ 16

*In re Adelphia Commc'ns Corp.,*
333 B.R. 649 (S.D.N.Y. 2005)............................................................................ 19, 21

*In re Adelphia Commc'ns Corp.,*
361 B.R. 337 (S.D.N.Y. 2007)............................................................................ 24-25

*In re Duplan Corp.,*
591 F .2d 139 (2d Cir. 1978)............................................................................... 21

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011) ........................................................................................ passim

*In re Issa Corp.*,
142 B.R. 75 (Bankr. S.D.N.Y. 1992)................................................................................ 23

*In re Ivan F. Boesky Sec. Litig.*,
957 F.2d 65 (2d Cir. 1992)............................................................................................... 14

*In re Lloyd's Am. Trust Funds Litig.*,
No. 96-CV-1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ........................... 20

*In re Maxwell Comm'n Corp. plc by Homan*,
93 F.3d 1036 (2d Cir. 1996) ............................................................................................ 21

*In re Pappas*,
207 B.R. 379 (B.A.P. 2d Cir. 1997).................................................................................. 19

*In re Prudential Lines*,
160 B.R. 32 (S.D.N.Y. 1993)............................................................................................ 19

*In re Suprema Specialties, Inc., et al.*,
330 B.R. 93 (S.D.N.Y. 2005)............................................................................................ 23

*In re WorldCom, Inc.*,
No. 08-cv-10354, 2009 WL 2215296 (S.D.N.Y. July 23, 2009)........................................ 22

*Innomed Techs., Inc. v. Worldwide Med. Techs., Inc.*,
267 F. Supp. 2d 1171 (M.D. Fla. 2003)............................................................................ 15

*JW Oilfield Equip., LLC v. Commerzbank, AG*,
764 F.Supp.2d 587 (S.D.N.Y. 2011)................................................................................ 21

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. N.Y. 1990)....................................................................................... 19-20

*Leema Enters., Inc. v. Willi*,
575 F. Supp. 1533 (S.D.N.Y. 1983).................................................................................. 19

*Licci v. Lebanese Canadian Bank, SAL*,
673 F.3d 50 (2d Cir. 2012)............................................................................................... 19

*Matter of Union Bank of Switzerland*,
601 N.Y.S.2d 253 (N.Y. Sup. Ct. 1993) ........................................................................... 14

*Mohammed v. Reno*,
309 F.3d 95 (2d Cir. 2002)............................................................................................... 23-24

*Quern v. Jordan*,
   440 U.S. 332 (1979).............................................................................................................. 14

*Rolls Royce Indus. Power (India) v. M.V. Fratzis M. Stratilatis Navigation Ltd.*,
   905 F. Supp. 106 (S.D.N.Y. 1995) ..................................................................................... 16

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999)............................................................................................................. 16

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)............................................................................................................. 16

*Société Generale v. Fla. Health Scis. Ctr., Inc.*,
   No. 03 Civ. 5615 (MCG), 2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003) ........................ 20

*Societe Internationale Pour Participations Industrielles Et Commerciales, S.A.*
   357 U.S. 197 (1958)............................................................................................................. 13

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*,
   482 U.S. 522 (1987)....................................................................................................... 10, 20

*Southern New England Telephone Co. v. Global NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010)......................................................................................... 15, 21

*Steel Co. v. Citizens for Better Env't*,
   523 U.S. 83 (1998)............................................................................................................... 15

*U.S. v. First Nat. City Bank*,
   396 F.2d 897 (2d Cir. 1968)...................................................................................... 10, 20-21

*Umana v. SCM*,
   291 A.D.2d 446 (N.Y. App. Div. 2002) ........................................................................... 14

Moving Defendants,[1] through their attorneys Cleary Gottlieb Steen & Hamilton LLP, respectfully submit this memorandum of law in support of their Emergency Motion for a Stay of the Bankruptcy Court's June 27, 2012 Memorandum Decision and Order Granting the Foreign Representative's Motion Seeking Expedited Initial Disclosures (the "Foreign Disclosure Order") and Leave to Appeal that Order on an emergency basis, pursuant to 28 U.S.C. § 158(a) and Federal Rules of Bankruptcy Procedure 8003, 8005 and 8011(d).[2]

## PRELIMINARY STATEMENT

This appeal results from two fundamental legal errors by the Bankruptcy Court. First, the Bankruptcy Court improperly read boilerplate language in certain of the foreign bank defendants' Fairfield subscription agreements, which acknowledge the banks' and their customers' willingness to comply with OFAC money laundering and anti-terrorist regulations to the extent those regulations could require disclosure of beneficial owners that might be

---

[1] The "Moving Defendants" HSBC Private Bank (Suisse) S.A., HSBC Securities Services (Luxembourg) S.A., HSBC Bank USA N.A., HSBC Private Bank (C.I.) Limited (sued here as HSBC Private Bank (Guernsey) Ltd.), HSBC Private Banking Nominee 1 (Jersey) Limited (sued here as FS/HSBC Private Banking Nom), Robinson & Co., Banco Nominees 2 (Guernsey) Limited (sued here as Banco Nominees (IOM) Limited), HSBC Guyerzeller Trust Company A.G., HSBC Securities (Panama) S.A., HSBC International Trustee Limited, HSBC Institutional Trust Services (Asia) Limited, Somers Nominees (Far East) Limited, HSBC Bank Bermuda Limited, Caceis Bank Luxembourg, Caceis Bank as successor in interest to CDC IXIS, Caceis Bank as successor in interest to Caceis Bank Ex Ixis Is, Crédit Agricole (Miami), Crédit Lyonnais, Crédit Lyonnais Miami, Crédit Agricole (Suisse) S.A., Crédit Agricole Titres, Calyon Paris, Cais Bank, Citibank (Switzerland) AG, BNP Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis, BNP Paribas (Suisse) SA Private, BNP Paribas Arbitrage SNC, BNP Paribas Securities Nominees, Fortis Bank SA/NV n/k/a BNP Paribas Fortis, BNP Paribas España, BGL BNP Paribas (sued as FS/ Fortis Banque Luxembourg and FS/Banque Générale du Luxembourg), BNY Mellon International Ltd. and BNY AIS Nominees Limited .

[2] Moving Defendants also have submitted a letter to the Court notifying it of this Emergency Motion and requesting that the following expedited briefing schedule be ordered: (1) any parties wishing to join in the Emergency Motion or otherwise challenge the Foreign Disclosure Order shall do so by 5:00 p.m. on June 29, 2012; (2) the Foreign Representative will file an opposition to the Emergency Motion by 5:00 p.m. on July 3, 2012; (3) the parties will file no further argument in connection with the Emergency Motion; and (4) if the Emergency Motion is granted, the parties will rely on their submissions in connection with the Emergency Motion and their papers below in connection with the appeal of the Foreign Disclosure Order. References to "Bankr. ECF No." are to the Bankruptcy Court docket below, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-03496, relevant filings from which are attached to the Declaration of Charles J. Keeley, dated June 28, 2012 ("Keeley Decl.").

designated as "Prohibited Persons" under the OFAC regulations, as constituting instead *general* waivers of the customer confidentiality and data protection laws of the banks' home jurisdictions, for any and all purposes, whether or not related to the OFAC regulations. Based on this plainly erroneous reading of the subscription agreements, the Bankruptcy Court gave no consideration at all to the bank customer confidentiality laws of at least 30 countries – attested to by numerous unrebutted foreign law expert declarations and submissions by the governments of Switzerland and France – and thereby completely abdicated its responsibility under this Circuit's precedents to conduct an international comity analysis that weighs the competing interests at stake. It also failed even to consider, as defendants proposed, whether the Foreign Representative should have been required to seek such information in conformity with the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters dated 18 March 1970 (the "Hague Evidence Convention"), by which he might obtain that information without exposing defendants to the risk of criminal, civil and/or regulatory sanctions in their home countries.

The Bankruptcy Court's error is especially egregious because it was purporting to act as a Chapter 15 court, whose *raison d'etre* is the international comity that the Bankruptcy Court has disregarded. If the Bankruptcy Court had engaged in the appropriate comity analysis it would not have permitted the Foreign Liquidator to short-cut the Hague Evidence Convention. That is especially true because (i) any urgency in obtaining the sought-after information is simply the product of over 24 months of inactivity by the Foreign Representative, and (ii) the BVI Courts, including most recently the BVI's appellate court, have held in test cases that there is no

substantive basis under BVI law for the restitution or mistake claims the Foreign Representative seeks to assert.[3]

The Bankruptcy Court's second fundamental error was to grant the merits discovery sought by plaintiff as bearing on any conduit or change of position defense that defendants might assert without first considering its own jurisdictional power to enter any order at all. Specifically, first, this Court in an earlier appeal directed the Bankruptcy Court to consider whether the applicable jurisdictional statute mandated abstention and the return of the removed cases to New York state court. Plainly, it does. Second, this Court's decision on that appeal also raised serious questions as to whether any federal subject matter jurisdiction would exist over these cases in any event, which questions this Court deferred in favor of resolving mandatory abstention first. Third, many of the defendants below, including our clients, object to the discovery sought because the court lacks personal jurisdiction over them.

The Bankruptcy Court ignored these questions, claiming that it did not need to decide any jurisdictional issues – including the abstention issues Your Honor instructed the Bankruptcy Court to reconsider – to order what it saw as non-merits discovery. This was error both because the discovery sought is merits discovery relating to an anticipated defense, and because the discovery sought is not remotely similar to the class of non-merits issues which a court may resolve prior to resolving a substantial challenge to its power over the defendant. Again, if the Court had properly considered these issues, it would have followed this Court's direction and been compelled to remand many, if not all, of these cases to state court. For any cases not remanded, the Bankruptcy Court should have reached defendants' jurisdictional challenges and

---

[3] Although not specifically addressed in the BVI cases, the Foreign Representative's novel statutory avoidance claims appear to fail for the same reasons as the purported common law claims.

concluded that it lacked subject matter and personal jurisdiction. Instead, the Bankruptcy Court

has entered an order that, if permitted to take effect, threatens to lead to collateral sanctions

litigation and/or the addition of hundreds if not thousands of additional defendants to a forum

where there is no basis whatsoever for them to be sued.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

As this Court is aware, the Foreign Representative commenced these so-called

"Redeemer Actions" to recover payments made by the Fairfield Funds – said to be the largest of

the Bernard Madoff feeder funds – pursuant to their Articles of Association in consideration for

shares tendered for redemption by the Funds' registered shareholders and the beneficial owners

of the shares. The Foreign Representative first filed actions against some registered shareholders

before the British Virgins Islands court (the "BVI Court") that is overseeing the Funds'

liquidation proceedings. The Foreign Representative then commenced additional actions in New

York state court and joined as defendants the unnamed beneficial owners of the shares.

In June 2010, the Foreign Representative commenced an ancillary case in the

Bankruptcy Court under Chapter 15 of the Bankruptcy Code by filing a petition for recognition

of the BVI liquidation proceedings as foreign main proceedings. The Bankruptcy Court granted

the petition on July 22, 2010.[4] The Foreign Representative then removed the actions previously

brought in New York state court to the Bankruptcy Court, and thereafter commenced additional

actions against registered shareholders and beneficial owners in the federal forum.

On May 23, 2011, the Bankruptcy Court granted the Foreign Representative's application

pursuant to Section 108 of the Bankruptcy Code for a two-year toll of applicable statutes of

limitations to bring suit against new defendants. *In re Fairfield Sentry Limited*, 452 B.R. 52

---

[4] Minute Order, *In re Fairfield Sentry Ltd.*, No. 10-13164 (Bankr. S.D.N.Y. July 22, 2010) (ECF No. 29).

(Bankr. S.D.N.Y 2011).   The toll took effect as of the date of Chapter 15 recognition, July 22,

2010, and therefore expires on July 22, 2012.   *Id.* at 62-63.   The Liquidator thus had two years to

pursue discovery under the Hague Evidence Convention to identify new defendants, if necessary.

On September 16, 2011, the BVI Court issued a ruling on a preliminary issues application

filed by certain defendants and held that "it is not open to [Fairfield] Sentry now to seek to

recover the price which it paid for the purchase of the shares of redeeming investors simply"

because a redeeming shareholder in surrendering its shares gave good consideration for the

payment.[5]   On October 10, 2011, the BVI Court awarded final judgment to defendants on this

basis.[6]

On September 19, 2011, this Court granted interlocutory appeal from and reversed a

decision by the Bankruptcy Court denying motions for remand and/or abstention filed by

defendants in certain of the removed actions.   *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665

(S.D.N.Y. 2011) (the "Remand/Abstention Decision").   Specifically, this Court overturned the

Bankruptcy Court's determination that the actions were within its "core" bankruptcy jurisdiction

and found it unnecessary to reach whether there was "related to" jurisdiction based on its remand

of the actions back to the Bankruptcy Court to reconsider whether they can be timely adjudicated

in state court, in which event the Bankruptcy Court must abstain from the actions.   *Id.* at 691.   To

date, the Bankruptcy Court has never complied with this Court's order, and has never

reconsidered its prior, erroneous abstention ruling.

---

[5] Bankr. ECF No. 645-1, Ex. 2 (Judgment, *Fairfield Sentry Limited (In Liquidation) v. Bank Julius Baer & Co. Ltd. et al.*, Claim No. BVIHC (Com) 30/2010, Eastern Caribbean Supreme Court in the High Court of Justice, British Virgin Islands, Commercial Division) (Keeley Decl Ex. 1).

[6] *See* Bankr. ECF No. 741-(Judgment, Eastern Caribbean Court of Appeal, Territory of the Virgin Islands, Court of Appeal, Quilvest Finance Ltd. et al. v. Fairfield Sentry Ltd. (In Liquidation), HCVAP 2011/Q41 (Entered June 13, 2011) (the "ECCA Judgment") (Keeley Decl. Ex. 12) (describing October 10, 2011 Judgment of the BVI Court).

On October 18, 2011, the Bankruptcy Court stayed all proceedings before it pending (i) the Foreign Representative's motion for leave to appeal Your Honor's decision to the U.S. Court of Appeals for the Second Circuit, and (ii) his then-anticipated appeal of the BVI Court's decision to the Eastern Caribbean Court of Appeals.[7]  The stay remains in effect.

On March 1, 2012, the Court of Appeals denied the Foreign Representative's petition for interlocutory appeal from Your Honor's decision, without prejudice to the parties again seeking leave to appeal after all proceedings concerning mandatory abstention have been completed in the Bankruptcy Court and the District Court.[8]

The Eastern Caribbean Court of Appeals dismissed the Foreign Representative's appeal on June 13, 2012, and affirmed the BVI Court's decision that Fairfield Sentry cannot seek to recover the redemption payments from shareholders.[9]  The Court held that Fairfield Sentry, "in paying the redemption price, did so in discharge of its debt obligations to the redeeming shareholders pursuant to [Fairfield] Sentry's Articles which remained perfectly valid and in force." ECCA Judgment ¶ 87.  The Foreign Representative has informed the Bankruptcy Court that he is considering requesting leave for a further appeal to the Privy Council of the United Kingdom.[10]

On May 25, 2012, less than two months from the expiration of the Section 108 toll, the Foreign Representative filed an application requesting that the Bankruptcy Court lift the stay and

---

[7] Bankr. ECF No. 416 (Order Staying Redeemer Actions, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-03496 (Bankr. S.D.N.Y. Oct. 18, 2011)).

[8] Order, *Fairfield Sentry Ltd. (In Liquidation) v. HSBC Private Bank (Suisse) SA*, No. 11-4425 (2d Cir. 2012) (ECF No. 53). *See also* 28 U.S.C. 1334(c)(2) (providing that only a denial of mandatory abstention is appealable to the Court of Appeals) .

[9] Bankr. ECF No. 741 (ECCA Judgment).

[10] Bankr. ECF No. 741 (Letter Regarding June 13, 2012 Decision of The Eastern Caribbean Court of Appeal) (Keeley Decl. Ex. 12)).

grant a motion (the "Disclosure Motion") by the Foreign Representative for an order requiring

disclosure from the named registered shareholder defendants of the identities and contact

information of the unnamed beneficial owners of the shares, as well as permission to amend the

complaints to name the beneficial owners as defendants.[11]   The Foreign Representative

maintains that the expiration of this toll does not actually affect whether his claims against the

unnamed beneficial owner defendants are timely, but in any event he sought such relief to "avoid

a dispute about this" subject in the future.[12]

   On June 8, 2012, more than 230 defendants filed objections to the Disclosure Motion on

numerous grounds.  These grounds included that ordering discovery in the removed actions

would disregard Your Honor's instructions remanding those actions to the Bankruptcy Court for

the limited purpose of reconsidering mandatory abstention, and that the Bankruptcy Court lacked

authority to order discovery because it does not have subject matter jurisdiction over the actions

or personal jurisdiction over the objecting defendants.[13]   Defendants also objected that

disclosure of the confidential customer information sought would violate the bank customer

confidentiality and privacy laws of at least 30 nations under whose laws defendants are

organized.[14]  Objection at 27-34.  They supported these objections with expert declarations from

numerous foreign law experts, as well as letters from the Swiss and French governments,

explaining to the Bankruptcy Court the criminal, civil and regulatory sanctions to which the

---

[11] Bankr. ECF No. 477 (Foreign Representative's Disclosure Motion) (Keeley Decl. Ex. 2)).

[12] Bankr. ECF No. 480 (Foreign Representative's Mem. of Law in Support of Disclosure Motion at ¶ 5 (Keeley Decl. Ex. 2)).

[13] Bankr. ECF No. 640 (Defendants' Objection to the Disclosure Motion (the "Objection") at 9-10 (Keeley Decl. Ex. 3)).

[14] These include entities in the following jurisdictions:  Andorra, Austria, The Bahamas, Bermuda, the British Virgin Islands, the Cayman Islands, Colombia, Finland, France, Germany, Guernsey, Hong Kong, the Isle of Man, Israel, Italy, Jersey, Korea, Kuwait, Liechtenstein, Luxembourg, Monaco, the Netherlands, Panama, Portugal, San Marino, Singapore, Spain, Sweden, Switzerland and the United Kingdom.

7

objecting defendants would be exposed if they made the disclosures that the Foreign
Representative requested and if the Bankruptcy Court ordered such disclosures rather than
requiring use of internationally-agreed discovery procedures, such as the Hague Evidence
Convention. *Id.* at 34-42.

On June 15, 2012, the Foreign Representative filed a reply in further support of the
Disclosure Motion. The reply raised many new arguments for the first time, including the utter
mischaracterization of a provision of the form Subscription Agreement entitled "Office of
Foreign Assets Control" (the "OFAC Provision"). According to its plain terms, this provision
provides for the subscribing banks to disclose information concerning "Prohibited Persons" –
those designated by OFAC as being involved with money laundering or terror financing – as
"required under applicable regulations" of OFAC, it does not constitute a general waiver by the
bank defendants for all purposes wholly unrelated to the OFAC regulations of the application of
their domestic criminal, civil and regulatory laws prohibiting them from disclosing customer
identification information.

On June 26, 2012, counsel for the Foreign Representative and several hundred defendants
appeared before the Bankruptcy Court for oral argument. The Bankruptcy Court stated that it
had reviewed the more than 100 objections received, but that it was prepared to rule without oral
argument because it viewed the matter as a "simple document case" and that "all of the
arguments that I have before me essentially are extraneous."[15] Defense counsel at the hearing
objected to the Court's failure to permit a response to the new arguments raised by the Foreign
Liquidator on reply, and specifically highlighted to the Court that the Foreign Liquidator had
improperly quoted and misrepresented the effect of the OFAC Provision.

---

[15] Keeley Decl. Ex. 11 (06/26/2012 Hearing Transcript at 10:24-11:3, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-034960 ("Hearing Tr.")).

On June 27, 2012, the Bankruptcy Court issued an 8-page Memorandum Decision and

Order granting the Foreign Representative's Disclosure Application and issued the Foreign

Disclosure Order, relying on the OFAC Provision of the Subscription Agreements as constituting

a general waiver of any reliance by the bank defendants on their respective domestic customer

confidentiality and privacy laws to resist the Disclosure Motion – which motion, it is undisputed,

has nothing at all to do with disclosures of Prohibited Persons required by the OFAC regulations

– and requiring Defendants to disclose the names and contact information of the beneficial

owners within 10 days (*i.e.*, by July 9).   The same day, Moving Defendants requested that the

Bankruptcy Court grant a five business day stay of the Foreign Disclosure Order pending the

District Court's consideration of the instant Emergency Motion for a further stay and leave to

appeal. The Bankruptcy Court has not yet ruled on the stay request.  On June 28, 2012, Moving

Defendants' filed the instant motion.

**ARGUMENT**

**I.    THE BANKRUPTCY COURT'S ORDER IS INFECTED BY FUNDAMENTAL
ERRORS OF LAW**

    **A.    The Bankruptcy Court Failed to Make Key Findings In Its Decision Based
On A Misreading Of Certain Subscription Agreements**

Based on its plan misreading of certain Subscription Agreements, the Bankruptcy Court

incorrectly assumed that Moving Defendants had consented to the relief requested and thus

failed to engage in *any* of the international comity analysis that was necessary to the resolution of

the dispute before it, and is required of any court in this Circuit, let alone a Chapter 15 ancillary

court assisting with a foreign liquidation.  As Moving Defendants show below, the OFAC

Provision is not a general consent to provide the disclosures the Foreign Representative seeks.

As a result of its incorrect conclusion that the OFAC Provision is such a general waiver of

reliance on foreign confidentiality and privacy laws, the Bankruptcy Court failed to engage in the

9

necessary "particularized analysis of the respective interests of the foreign nation and the requesting nation," *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 543-44 & n.28 (1987), before ordering disclosures that would violate foreign law. *See also United States v. First Nat. City Bank*, 396 F.2d 897, 902 (2d Cir. 1968).

Notably, the Foreign Liquidator did not raise his erroneous argument regarding waiver based on the OFAC Provision in the Disclosure Motion, but instead only on *reply*, after defendants had filed their oppositions. The Bankruptcy Court did not allow oral argument, Hearing Tr. at 10:24-11:3, and defendants were not given the opportunity to fully respond to this argument. During the few remarks the Bankruptcy Court did permit defendants to make, defense counsel explained that the Foreign Representative had grossly mischaracterized the OFAC Provision, omitting its title – "Office of Foreign Assets Control" – and presenting only select portions of its text divorced from its context, which makes plain that the text is intended exclusively to provide for the disclosure of the identities of beneficial owners who may be designated by OFAC as "Prohibited Persons" based on their involvement in money laundering or terror financing, and is not a general consent to disclose the names of beneficial owners for the purposes requested by the Foreign Representative. Hearing Tr. at 17:4-18:8. Further, defense counsel after the hearing sent the Bankruptcy Court a letter reaffirming that the OFAC Provision has no bearing on the relief the Foreign Representative requests.[16] Inexplicably, the Bankruptcy Court did not in fact address these points in its decision, which does not in any way address the specific context in which the relevant language appears, and instead presents it in the same truncated form by which the Foreign Representative disingenuously presented it to the Bankruptcy Court in his reply brief.

---

[16] Bankr. ECF No. 777 (Letter from Dorothy Heyl to the Bankruptcy Court, dated June 26, 2012) (Keeley Decl. Ex. 10).

Moving Defendants quote the full relevant language below and note that the Foreign

Representative quoted only section (B) *and* omitted in its entirety the portion we highlight here:

22. ***Office of Foreign Assets Control.*** (A) Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any applicable laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure, unless the Fund, after being specifically notified by Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be permitted, or (iv) for a foreign shell bank (such persons or entities in (i) - (iv) are collectively referred to as "Prohibited Persons").

(B) Subscriber represents, warrants and covenants that: ***(i) it is not, nor is any person or entity controlling, controlled by or under common control with Subscriber, a Prohibited Person, and*** (ii) to the extent Subscriber has any beneficial owners or is acting as agent or nominee in connection with this investment, (a) it has carried out thorough due diligence to establish the identities of such beneficial owners, ***(b) based on such due diligence, Subscriber reasonably believes that no such beneficial owners are Prohibited Persons,*** (c) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of Subscriber's complete redemption from the Fund, and (d) it will make available such information and any additional information requested by the Fund that is required under applicable regulations.

(C) If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, freeze Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or Subscriber's investment may immediately be redeemed by the Fund, and the Fund may also be required to report such action and to disclose Subscriber's identity to OFAC or other authority. In the event that the Fund is required to take any of the foregoing actions, Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator, and their respective affiliates, directors, members,

partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.[17]

A plain reading of the entire OFAC Provision (or even of the entirety of section 22(B)) yields only one reasonable interpretation: that this provision is not a consent to provide identification and contact information for beneficial holders outside of what is required by the relevant OFAC regulations. The Foreign Representative does not, and cannot, contend that he is attempting to properly enforce the OFAC Provision with the Disclosure Motion.

Further, had the Bankruptcy Court engaged in an appropriate international comity analysis, rather than relying on the Foreign Representative's mischaracterization of the OFAC Provision, it should have found that the Foreign Representative is not entitled to the relief requested. At stake are the interests of at least 30 foreign sovereigns whose laws protect bank customer confidentiality and privacy in financial transactions and therefore prohibit the disclosure of the information at issue unless it is obtained through international mechanisms such as the Hague Evidence Convention. The significant foreign sovereign interests at stake here are illustrated by the fact that the Swiss Embassy and the French Ministry of Justice both wrote letters informing Judge Lifland of the criminal, civil and regulatory sanctions to which the bank defendants would be exposed if they disclosed the information the Foreign Representative seeks other than pursuant to a proper Hague Convention request.[18]

---

[17] Bankr. ECF No. 478-1 (Declaration of Kenneth Krys, Ex. B (the "Form Subscription Agreement") at 6, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-03496 (Bankr. S.D.N.Y. May 24, 2012) (Keeley Decl. Ex. 2)).

[18] *See* Bankr. ECF No. 645-1, Ex. 13 (Letter from Embassy of Switzerland in the United States of America to The Honorable Burton R. Lifland, Dated Oct. 8, 2011 (Keeley Decl. Ex. 3)); Bankr. ECF No. 739-1 (Letter from Directorate of Civil Affairs and of the Seals, French Ministry of Justice (Keeley Decl. Ex. 9)).

Further, the only possible interest of the United States in these matters is providing comity and cooperation to the BVI main proceeding. However, the BVI Court has already rejected the claims to which the discovery relates on the merits, and the Eastern Caribbean Court of Appeals affirmed this decision on June 13, 2012.

Moving Defendants also established with numerous foreign law expert declarations submitted to the Bankruptcy Court the extreme hardship they will face if forced to comply with the Foreign Disclosure Order, including criminal, civil and regulatory sanctions that include potentially the imprisonment of bank officials, monetary fines and revocation of banking licenses. *See Societe Internationale Pour Participations Industrielles Et Commerciales, S.A.*, 357 U.S. at 211; *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 525-26 (S.D.N.Y. 1987). Moving Defendants would also likely be subject to other penalties, including civil liability, and certainly professional and reputational hardship for betraying their customers' confidence by disclosing their protected information.

In contrast to these severe hardships, the Foreign Representative failed to establish a need to obtain the requested discovery on an expedited basis prior to the determination of threshold issues such as abstention, the impact of the BVI courts' decisions on the claims in the United States and whether those claims can otherwise survive a dismissal motion. Moreover, even if there were such a need, it is one caused by the Foreign Representative's inexplicable failure to pursue Hague Evidence Convention discovery sooner. Furthermore, the Foreign Representative did not ask a *single* defendant whether it was willing to seek consent from the beneficial owners to waive the foreign law restrictions on disclosure until June 21, 2012, after the Disclosure Motion was fully briefed. All of the Moving Defendants contacted by the Foreign Representative responded that they are willing to seek such consent.

13

**B.     The Bankruptcy Court Ignored This Court's Instruction To Reconsider Mandatory Abstention**

A bankruptcy court's actions on remand should not be inconsistent with either the express terms or the spirit of a district court's mandate. *See Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979); *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992).   Yet that is precisely what has occurred here.  The Bankruptcy Court's decision to permit discovery in the removed actions is fundamentally incompatible with both the terms and the spirit of this Court's mandate over 9 months ago that "the Bankruptcy Court must reconsider abstaining from hearing these cases" and its instructions remanding the actions to the Bankruptcy Court for this limited purpose. *Fairfield Sentry*, 458 B.R. at 689.  As Your Honor's decision made clear, the question whether these actions can be timely adjudicated in New York state court, thus satisfying the only remaining requirement for mandatory abstention under 28 U.S.C. § 1334(c)(2), is a threshold question preceding even a determination whether there is even "related to" bankruptcy subject matter jurisdiction. *Id.*

The Bankruptcy Court should have followed Your Honor's instructions and considered the abstention question first and, if abstention were required -- as Moving Defendants believe it is -- refer the Disclosure Motion and the requisite international comity analysis to the New York state courts. *See In re Ivan F. Boesky Sec. Litig.*, 957 F.2d at 69 (reversing district court action inconsistent with prior mandate and noting that "district courts should refrain from reaching out for issues and depriving state courts of an opportunity to develop and apply state law").[19]

---

[19]    New York state courts frequently decide such matters. *See, e.g., Umana v. SCM*, 291 A.D.2d 446 (N.Y. App. Div. 2002) (affirming decision denying discovery request and holding that the trial court "providently exercised its discretion in requiring the plaintiff to follow the [Hague] Convention's procedures in the first instance"); *Matter of Union Bank of Switzerland*, 601 N.Y.S.2d 253, 254-56 (N.Y. Sup. Ct. 1993) (refusing to hold Swiss bank in contempt for failing to disclose customer information in violation of Article 47 of the Swiss Federal Banking Code and Articles 271 and 273 of the Swiss Penal Code).

C.     **The Bankruptcy Court Erred in Ruling That It Does Not Need Subject
        Matter or Personal Jurisdiction to Issue the Foreign Disclosure Order**

The Bankruptcy Court also erred in ruling that it has power to issue the Foreign

Disclosure Order even without determining Moving Defendants' challenges to the court's

exercise of personal and subject matter jurisdiction.

It is a fundamental principle that "[t]he validity of an order of a federal court depends

upon that court's having jurisdiction over both the subject matter and the parties.'" *So. New*

*England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (quoting *Ins. Corp. of*

*Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701 (1982)).   *See also  Sinochem*

*Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (same).   Personal and

subject matter jurisdiction each are "essential element[s] of the jurisdiction of a district court,

without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon*

*Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks omitted).   "'Without jurisdiction the

court cannot proceed at all in any cause.'" *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94

(1998).[20]   This is the rule of *Ex parte McCardle*, 7 Wall. 506, 514 (1869).

Thus, courts often deny requests for expedited discovery in the face of challenges to their

personal or subject matter jurisdiction, or quash subpoenas for want of jurisdiction over the party

from whom discovery is sought. *See Innomed Techs., Inc. v. Worldwide Med. Techs., Inc.*, 267

F. Supp. 2d 1171, 1173 (M.D. Fla. 2003) (denying request for expedited non-jurisdictional

---

[20] There are few exceptions to the rule that a court should not proceed with a case until it determines that
there is subject matter jurisdiction and at least a *prima facie* basis for personal jurisdiction over the
parties. *See Sinochem*, 549 U.S. at 431-32.   A court may decide to "den[y] audience to a case" before
determining jurisdiction, such as by abstaining or dismissing for *forum non conveniens*, *see Sinochem*,
549 U.S. at 432, or take actions in furtherance of determining whether jurisdiction exists, *see, e.g.*, *Lehigh
Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975) (holding that jurisdictional discovery
may be appropriate where the defendant challenges jurisdiction), at least where a *prima facie* showing has
been made, *see id.* at 93-94; *RSM Prod. Corp. v. Friedman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009),
*aff'd*, 387 F. App'x 72 (2d Cir. 2010) (stating that even jurisdictional discovery is generally not permitted
where the complaint does not allege a *prima facie* case of jurisdiction).   The Foreign Representative did
not argue that any of these exceptions applied to his Disclosure Motion.

discovery prior to court's determination of personal jurisdiction based on allegations of amended

complaint, because "[a] court without personal jurisdiction is powerless to take further action");

*Rolls Royce Indus. Power (India) v. M.V. Fratzis M. Stratilatis Navigation Ltd.*, 905 F. Supp.

106, 107 (S.D.N.Y. 1995) (denying plaintiff's motion for expedited discovery because the court

lacked subject matter jurisdiction) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6

(11th Cir. 1999). *See also Goddard v. CSK Auto, Inc.*, No. C09-1391 (MJP), 2009 WL 4015611,

at *3 (W.D. Wash. Nov. 18, 2009) ("the Court may not rule on that motion [for expedited

discovery] in the absence of subject matter jurisdiction"); *111 Debt Acquisition LLC v. Six*

*Ventures, Ltd.*, No. 04 Civ. 8955 (NRB), 2008 WL 3874630, at *2 (S.D. Ohio Aug. 15, 2008)

("The Court is not inclined to allow expedited discovery while jurisdiction and venue are at

issue"); *Estate of Ungar v. Palestinian Authority*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005)

(quashing subpoena for lack of personal jurisdiction).

Here, the Bankruptcy Court erroneously ruled that – regardless of whether it must abstain

or lacks subject matter or personal jurisdiction – it nonetheless may order Defendants to make

the disclosures the Foreign Representative requested, and presumably to sanction any non-

compliance, because the Bankruptcy Court was "not ruling on the merits at this time and the

Foreign Representative does not seek merit-based discovery." Foreign Disclosure Order at 2.

The Bankruptcy Court cited no law supporting the making of a substantive discovery ruling such

as the one it made here, even if the discovery sought could be characterized as not "merits-

based,"[21] and Moving Defendants are aware of none.

---

[21] The cases cited by the Bankruptcy Court did not even involve objections to discovery based on lack of subject matter or personal jurisdiction. *See* Foreign Disclosure Order at 3-4. The Bankruptcy Court also found that it had authority to issue the order to preserve the "status quo," id. at 5, but the case it cited for this proposition, *111 Debt Acquisition LLC*, 2008 WL 3874630, but that case noted that courts have authority to issue orders preserving the status quo "while they are inquiring into whether they have jurisdiction," *id.* at *2, not while they are consciously ignoring this question.

16

Moreover, the Bankruptcy Court contradicted itself by expressly acknowledging that the requested discovery relates directly to Defendants' defenses *on the merits*. The Bankruptcy Court stated that "[t]he Foreign Representative seeks this relief because certain Defendants have indicated that they intend to raise *defenses* on the grounds that they have acted solely as agents, trustees, or custodians for Beneficial Holders, or that they changed their positions by transmitting redemption payments to Beneficial Holders." Foreign Disclosure Order at 2 (emphasis added). The Foreign Representative also has requested that the Bankruptcy Court sanction failure to comply with the Foreign Disclosure Order by striking such merits defenses.

Defendants' challenges to subject matter and personal jurisdiction are substantial and the Bankruptcy Court is not permitted to ignore those challenges. With respect to subject matter jurisdiction, Your Honor's decision finding no "core" jurisdiction over these actions noted that "[w]hile plenary cases in the United States assert universal jurisdiction over a debtor's assets, Chapter 15 ancillary cases assert only territorial jurisdiction over a debtor's assets located here." *In re Fairfield Sentry*, 458 B.R. at 679 (citations omitted). Thus, "all of the provisions in Chapter 15 dealing directly with relief as to assets – section 1520 (automatic stay on only U.S. assets), section 1521(a)(5) (realization of only U.S. assets), and section 1528 (plenary proceeding in a Chapter 15 case limited to only U.S. assets), among others – are limited to assets within the territorial jurisdiction of the United States." *Id.* at 680. Defendants submit that those territorial restrictions on jurisdiction also deprive the Bankruptcy Court of "related to" jurisdiction, an issue that this Court found unnecessary to reach because it instructed the Bankruptcy Court to reconsider the threshold issue of abstention.

For personal jurisdiction, the Foreign Representative seeks to rely on a jurisdictional consent clause found in Subscription Agreements executed by some but not all shareholders.

17

That clause by its plain terms is inapplicable for two reasons.  First, it provides a consent to jurisdiction only for "any suit, action or proceeding *with respect to* this [Subscription] Agreement *and* the Fund . . . ." Form Subscription Agreement at p.6.   Because these "redeemer" claims for restitution are about the calculation of the Fairfield Funds' Net Asset Values and procedures for making redemption payments, both of which are governed exclusively by the Articles of Association, they are not claims "with respect to" the Subscription Agreement. The Foreign Representative himself told the BVI Court that his "claims are *not* made on or *in respect of* those [subscription] agreements."[22]

Second, the clause only consents to jurisdiction of the "the New York Courts."  Form Subscription Agreement at p.6.   Reading the clause as a whole, the phrase "the New York Courts" must refer to New York State courts only, because the very same sentence authorizes service pursuant to "New York state law" (as opposed to federal law).  *Id.*  The context requires the same conclusion.  By their terms the Subscription Agreements apply to "Non-United States of America Subscribers Only." *Id.* at p.1  Therefore diversity jurisdiction would never exist and consent to State court jurisdiction only would be necessary and sufficient.  At best, the term "the New York Courts" is ambiguous and must be construed against the Fairfield Funds, which drafted this take-it-or-leave-it provision, under the doctrine of *contra proferentem*.  *City of New York v. Pullman Inc.*, 477 F. Supp. 438, 442 (S.D.N.Y. 1979) (Weinfeld, J.) (concluding that the phrase "New York courts" is ambiguous because it could refer to courts *in* New York State or courts *of* New York state, both of which readings are "equally plausible," and construing the phrase against the position of the drafter of the agreement at issue).  Plaintiffs sought to rely on Judge Weinfeld's alternative rationale that jurisdiction once existing is not renounced absent

---

[22] See *See* Bankr. ECF No. 645-1, Ex. 4 (Fairfield Sentry Limited Skeleton Argument for Application for Permission to Serve Out Of Jurisdiction dated May 12, 2010) ¶ 16(6) (emphasis added) (Keeley Decl. Ex. 3) .

clear indication. That rationale is not applicable here because, while there was no dispute that

jurisdiction existed over defendant Pullman, here there is no jurisdiction over the defendants

apart from the claimed consent in the Subscription Agreements.[23]

## II.  THIS COURT SHOULD GRANT LEAVE TO APPEAL THE FOREIGN DISCLOSURE ORDER

This Court has jurisdiction, pursuant to 28 U.S.C. § 158(a), to be exercised as a matter of

discretion, to hear appeals from interlocutory orders and decrees of Bankruptcy Courts. 28

U.S.C. § 158(a); *see also Gibson v. Kassover (In re Kassover)*, 343 F.3d 91, 94 (2d Cir. 2003).

In exercising that discretion, courts in this District have looked for guidance to 28 U.S.C. §

1292(b), and have granted such leave where, as here: (a) the order involves controlling questions

of law; (b) there is a substantial ground for difference of opinion; and (c) an immediate appeal

may materially advance the ultimate termination of the litigation. *See, e.g., In re Adelphia*

*Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005). *See also Klinghoffer v. S.N.C. Achille*

---

[23] This is because without any applicable consent to jurisdiction, the Foreign Representative cannot establish personal jurisdiction based on minimum contacts. The only jurisdictional basis apart from the Subscription Agreements asserted by the Foreign Representative in his brief below is the allegation that certain defendants directed redemption payments to or through New York bank accounts used by foreign banks to clear and hold U.S. dollar transaction proceeds balances that they are not allowed to hold directly. But this allegation (even if it were the case as to all of the defendants, which it is not) fails to establish personal jurisdiction. Depositing the proceeds of a transaction into an account at a New York bank does not suffice. *See generally Bersch v. Drexel Firestone, Inc.*, 519 F. 2d 974, 998 (2d Cir. 1975) (analyzing predecessor statute to N.Y.C.P.L.R. §§ 301-02), *rev'd on other grounds,* 130 S. Ct. 2869 (2010). *See also Societe Generale v. Fla. Health Scis. Ctr., Inc.*, No. 03 Civ. 5615 (MCG), 2003 WL 22852656, at *4 (S.D.N.Y. Dec. 1, 2003) ("maintenance of a bank account in New York is usually insufficient to confer personal jurisdiction over a non-domiciliary defendant, even in suits arising from the account"). This includes the generalized use of a correspondent bank account in New York. *See DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 423-24 (S.D.N.Y. 2010); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 n.1 (S.D.N.Y. 1983). As noted in Defendants' papers below, the Second Circuit recently certified certain questions potentially relevant to this issue to the New York Court of Appeals. *See Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 74 (2d Cir. 2012). If the mere depositing of the U.S. dollar proceeds of a foreign transaction in an account in the United States were sufficient to confer specific jurisdiction with respect to that transaction, the requirement of a substantial nexus to support specific jurisdiction would be eroded to the vanishing point. In addition, Moving Defendants established below that the Foreign Representative's attempt to serve defendants domiciled in Switzerland or Panama by mail was ineffective and reserve those objections.

*Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 23 (2d Cir. 1990); *In re Pappas*, 207 B.R. 379, 381 (B.A.P. 2d Cir. 1997); *In re Prudential Lines*, 160 B.R. 32, 34 (S.D.N.Y. 1993);   As shown below, all of these elements are present here.

### A.    The Appeal Involves Controlling Questions Of Law Which Will Have A Material Effect On The Actions

The Bankruptcy Court's failure to conduct any meaningful comity analysis, as well as its failure to address its power to act based on abstention, subject matter jurisdiction and personal jurisdiction considerations, are "'pure' question[s] of law that the reviewing court could decide quickly and cleanly without having to study the record" and could also terminate the Foreign Representative's actions, or at least materially affect them. *See In re Adelphia Commc'ns Corp.*, 333 B.R. at 658 (citation omitted).

### B.    Substantial Grounds Exist For Differences Of Opinion On The Controlling Questions Of Law

All of the fundamental errors of law committed by the Bankruptcy Court discussed above involve grounds for difference of opinion because "(1) there is conflicting authority on the[se] issue[s], or (2) the[se] issue[s] [are] particularly difficult and of first impression in the Second Circuit." *In re Lloyd's Am. Trust Funds Litig.*, No. 96-CV-1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990)) (additional citations omitted).

First, as noted above, long-settled Supreme Court and Second Circuit precedents establish that a court faced with a conflict between a U.S. discovery request and foreign law precluding compliance with that request must engage in the international comity analysis that the Bankruptcy Court failed to conduct before ordering disclosures that would violate the laws of other nations. *Société Nationale Industrielle Aérospatiale*, 482 U.S. at 543-44 & n.28; *First Nat.*

*City Bank*, 396 F.2d at 902. Here, there exists a significant difference of opinion with respect to

international comity. Courts have acknowledged that where two states may enforce their

respective rules of law, "each state is *required* by international law to consider, in good faith,

moderating the exercise of its enforcement jurisdiction" should the comity factors be met. *First*

*Nat. City Bank*, 396 F.2d at 902 (emphasis added); *JW Oilfield Equip., LLC v. Commerzbank,*

*AG*, 764 F.Supp.2d 587, 596 (S.D.N.Y. 2011). Further, that "[c]omity is especially important in

the context of the Bankruptcy Code." *In re Maxwell Comm'n Corp. plc by Homan*, 93 F.3d

1036, 1048 (2d Cir. 1996). The Bankruptcy Court in this case disregarded these principles

entirely, and failed to conduct *any* comity analysis, creating at least a significant difference of

opinion on this controlling question of law.

Second, despite the Bankruptcy Court's attempt to avoid threshold jurisdiction issues, the

validity of its Foreign Disclosure Order depends on there being subject matter and personal

jurisdiction. *So. New England Tel. Co.,* 624 F.3d at 132. As this Court has already concluded,

> [t]his case presents issues of first impression regarding federal subject
> matter jurisdiction of the bankruptcy courts in a Chapter 15 case. The
> issues . . . are nuanced and difficult, involve a new statutory scheme, and
> reach questions about the limits of the bankruptcy court's jurisdiction.
> There are substantial grounds for differences of opinion not only with
> respect to the Bankruptcy Court's determinations as to jurisdiction but also
> with respect to its determination as to abstention. Moreover, the issues are
> pure issues of law. The litigation has barely progressed, and little, if any,
> discovery has even been conducted. The substantive issues can be decided
> on the basis of the amended complaints. Finally, the determination of
> subject matter jurisdiction is not only of utmost importance in federal
> court but also would materially affect the litigation's outcome.

*In re Fairfield Sentry*, 458 B.R. at 673 (internal citations omitted).

### C.   An Immediate Appeal Will Materially Advance The Ultimate Termination Of This Litigation

When deciding whether an appeal will materially advance the termination of the

litigation, the "critical requirement is that [an interlocutory appeal] have the potential for

21

substantially accelerating the disposition of the litigation.'" *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (citations omitted) (emphasis added).  That is certainly true here.

There is no question that an immediate appeal will substantially advance the termination of all of the Foreign Representative's hundreds of actions in the Bankruptcy Court if the Bankruptcy Court follows the course that this Court has already directed it to follow by reconsidering mandatory abstention.  Moreover, without an immediate appeal, substantial time, money and judicial resources will have been needlessly wasted if it were later determined by this Court – after plenary proceedings involving hundreds of parties (or potentially thousands, if the Bankruptcy Court is not reversed), numerous experts and extensive motion practice – that the Bankruptcy Court lacked jurisdiction to hear these cases in the first place or should have mandatorily abstained, and thus lacked authority to order the disclosures sought by the Disclosure Motion.  An immediate appeal could avoid years of needless litigation, untold delay and the expenditure of many millions of dollars.

Finally, requiring the Bankruptcy Court to balance the interests of other nations whose laws prohibit the disclosure at issue likely would materially advance the termination of this litigation by preventing the joinder of additional defendants prior to the court's consideration of threshold jurisdictional issues and the impact of the BVI Court's dismissal of the Foreign Representative's claims on the merits.

### D.   The Bankruptcy Court's Foreign Disclosure Order Presents Exceptional Circumstances Meriting Immediate Review

Because there are no standards specified on when to grant leave to appeal from a Bankruptcy Court, this Court has full discretion in determining whether to grant appeal, and need only apply the Section 1292(b) factors as guidance. *See In re WorldCom, Inc.*, No. 08-cv-10354, 2009 WL 2215296, at *3 (S.D.N.Y. July 23, 2009).  Here, in addition to the fact that an

22

immediate appeal is plainly warranted under the discretionary Section 1292(b) factors,
"exceptional circumstances" also justify this Court's immediate review of the Disclosure Ruling.

The unprecedented nature of the Foreign Disclosure Order alone justifies an immediate
appeal.  In derogation of this Court's instructions to reconsider mandatory abstention, in the face
of serious challenges to both subject matter and personal jurisdiction, and despite the fact that the
merits of the Foreign Representative's claims have already been conclusively rejected in the BVI
main proceeding, the Bankruptcy Court  has in its ancillary role under Chapter 15 ordered
hundreds of non-U.S. shareholders in foreign funds to disclose the names of thousands of
beneficial owners of the shares, where such disclosure likely would violate the laws of at least 30
nations and subject defendants to criminal, civil and regulatory sanctions.  The Bankruptcy Court
issued this order to provide "belt and suspenders" protection to a Foreign Representative who
does not even claim that this information is necessary and has not even attempted to explain why
he could not pursue this discovery through the Hague Evidence Convention.  Importantly, by
contrast, the BLMIS Trustee has indicated he will utilize the Hague Evidence Convention's
procedures to obtain evidence of the identities of the beneficial owners of the Fairfield Funds'
shares.  Finally, the Foreign Disclosure Order rests on a plain misreading of the OFAC
Provision in the Subscription Agreements.  It therefore carries with it serious implications for
international comity and unnecessarily imposes severe hardships on Defendants.

## III.    THIS COURT SHOULD STAY THE BANKRUPTCY COURT'S FOREIGN DISCLOSURE ORDER PENDING APPEAL

This Court should enter a stay here because (1) there is a substantial possibility of success
on appeal, (2) there is a risk of irreparable injury to Moving Defendants absent a stay, (3) a stay
will not cause the Foreign Representative substantial harm, and (4) the public interest favors a
stay. *In re Issa Corp.*, 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992); *In re Adelphia Commc'ns Corp.*,

23

361 B.R. 337, 346 (S.D.N.Y. 2007); *In re Suprema Specialties, Inc., et al.,* 330 B.R. 93, 95

(S.D.N.Y. 2005). These factors are to be considered together, and "more of one excuses less of

the other." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (citation and internal quotation

marks omitted). Therefore, "[t]he probability of success that must be demonstrated is inversely

proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay." *Id.*

(citation and internal quotation marks omitted). As demonstrated below, application of these

factors here amply supports the stay that Moving Defendants seek.

### A. Moving Defendants Have a Substantial Possibility of Success on the Merits of Their Appeal

There is a substantial possibility that Moving Defendants will succeed in having leave to

appeal granted by the District Court and in winning reversal of the Foreign Disclosure Order.

The Bankruptcy Court made a number of fundamental errors in its Foreign Disclosure Order that

involve controlling questions of law requiring review by the District Court. As detailed above,

each of these decisions constitutes a fundamental error of law.

### B. The Moving Defendants Will Suffer Irreparable Injury Absent A Stay

The Foreign Disclosure Order, which compels Moving Defendants to disclose the

beneficial owners' identities within ten days, will result in harm to Moving Defendants that is

"neither remote nor speculative, but *actual and imminent*." *In re Adelphia Commc'ns Corp.*, 361

B.R. at 346 (internal quotation marks omitted) (emphasis added). Absent a stay of the Order

pending the District Court's disposition of the Moving Defendants' appeal, or until the Motion

for Leave to Appeal is denied, Moving Defendants will be forced to respond immediately to the

Bankruptcy Court's Order, facing irreparable injury resulting from *either* compliance *or*

noncompliance. Further, absent a stay, Defendants will face this Hobson's choice before

24

threshold matters of subject matter jurisdiction, mandatory abstention, as expressly instructed by this Court to be decided, and personal jurisdiction are resolved.

Additionally, if this Court declines to stay the Redeemer Actions, any appeal by Moving Defendants would be moot, further demonstrating the irreparable harm to Defendants. *See In re Adelphia Commc'ns Corp.*, 361 B.R. at 348 ("In evaluating the irreparable harm element, it is [also] necessary to analyze the risk that an appeal would be mooted in the absence of a stay.").

### C.    The Foreign Representative Will Not Be Harmed By A Stay

By contrast, any harm to the Foreign Representative if this Court stays the Redeemer Actions is speculative at best, because he has asserted that naming beneficial holders as defendants prior to expiration of the Section 108 toll is not actually necessary to prevent claims against them from becoming time-barred but just to "avoid a dispute" about this subject in the future. *See* Foreign Rep.'s Mem. of Law in Support of Disclosure Motion ¶ 5.

### D.    The Public Interest Will Be Served By A Stay

The significant jurisdictional issues at stake and judicial economy urge imposing a stay pending the disposition of Moving Defendants' Motion for Leave to Appeal. *Eberle v. Smith*, No. 07-CV-0120 W(WMC), 2008 WL 238450, at *4 (S.D. Cal. Jan. 29, 2008) (granting a stay, in part, because it would serve the public interest by promoting judicial efficiency and economy).

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay enforcement of the Foreign Disclosure Order and grant Defendants leave to appeal from it.

Dated:   New York, New York
         June 28, 2012

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Thomas J. Moloney, a Member of the Firm

*Attorneys for Defendants Attorneys for Defendants
HSBC Private Bank (Suisse) S.A., HSBC Securities
Services (Luxembourg) S.A., HSBC Bank USA N.A.,
HSBC Private Bank (C.I.) Limited (sued here as
HSBC Private Bank (Guernsey) Ltd.), HSBC Private
Banking Nominee 1 (Jersey) Limited (sued here as
FS/HSBC Private Banking Nom), Robinson & Co.,
Banco Nominees 2 (Guernsey) Limited (sued here as
Banco Nominees (IOM) Limited), HSBC Guyerzeller
Trust Company A.G., HSBC Securities (Panama)
S.A., HSBC International Trustee Limited, HSBC
Institutional Trust Services (Asia) Limited, Somers
Nominees (Far East) Limited, HSBC Bank Bermuda
Limited, Caceis Bank Luxembourg, Caceis Bank as
successor in interest to CDC IXIS, Caceis Bank as
successor in interest to Caceis Bank Ex Ixis Is,
Crédit Agricole (Miami), Crédit Lyonnais, Crédit
Lyonnais Miami, Crédit Agricole (Suisse) S.A.,
Crédit Agricole Titres, Calyon Paris, Cais Bank,
Citibank (Switzerland) AG, BNP Paribas (Suisse)
SA, BNP Paribas (Suisse) SA Ex Fortis, BNP
Paribas (Suisse) SA Private, BNP Paribas Arbitrage
SNC, BNP Paribas Securities Nominees, Fortis Bank
SA/NV n/k/a BNP Paribas Fortis, BNP Paribas
España, BGL BNP Paribas (sued as FS/ Fortis
Banque Luxembourg and FS/Banque Générale du
Luxembourg), BNY Mellon International Ltd. and
BNY AIS Nominees Limited*

26